1839.

COMMERCIAL
BANK OF BUF-
FALO
*v.*
THE BANK OF
THE STATE OF
NEW YORK.

---

## COMMERCIAL BANK OF BUFFALO *v.* THE BANK OF THE STATE OF NEW YORK.

In relation to a loss of $2,000, in notes of and belonging to the Bank of Buffalo, it appeared, from the testimony of clerks of the Bank of the State of New York, that the latter bank had received during a certain week $56,526 of such notes; that they counted them, did them up into small parcels, marking each parcel and making a list, and then bundled and sealed them up; and the parcel (whatever it really contained) got safe to the bank of Buffalo—but the cashier and another clerk of the latter bank deposed positively to a deficiency in the parcel to the amount of $2,000, from having actually counted the notes contained therein when opened, and also that, while so counting, none were purloined, mislaid or overlooked, they assorting the notes, putting those of the same denomination together, and then counting those of such denomination by themselves, setting down the number and amount on the list found in the bundle; and by adding the total together, finding the deficiency: *The Court held*, that the Bank of the State of New York should make good to the Bank of Buffalo the $2,000 of missing notes; but decreed that each bank should bear its own costs of suit.

1839.

*Bank.*
*Lost notes.*
*Costs.*

QUESTION as to making good a loss of two thousand dollars of notes of the Bank of Buffalo which had been received by the Bank of the State of New York in the city of New York; and which the latter insisted they had, in a parcel formed of these and other notes of the Bank of Buffalo, forwarded to the latter. Further particulars will be found in the opinion of the court.

THE VICE-CHANCELLOR :—This case turns altogether upon a point of fact about which the parties are at issue : namely, whether the two thousand dollars in notes of the Commercial Bank of Buffalo (being the matter in controversy) were not contained in the packet or bundle of notes made up by the clerks of the defendants for transmission, when it was put under envelope and sealed and delivered to the messenger or agents of the complainants for that purpose ?

1839.

COMMERCIAL BANK OF BUF-FALO
v.
THE BANK OF THE STATE OF NEW YORK.

There is no reason to suppose that the two thousand dollars were abstracted from the bundle after it left the Bank of the State of New York and before it reached the complainants ; for, the testimony shows the seals had not been broken, nor the interior of the packet disturbed. I am bound, therefore, to believe that when received at Buffalo it was in the same condition as when it left Wall street in New York ; and if, on its being first opened at the Commercial Bank of Buffalo, it was deficient two thousand dollars, that deficiency must have existed when it was enclosed and put under seal. The defendants' witnesses (their clerks) undertake to prove that no such deficiency existed ; that the amount of the circulating notes of the complainants received by the defendants during the week ending on the twentieth day of April, was forty-six thousand five hundred and twenty six dollars; that the amount was ascertained by actually counting the notes done up into small parcels, and each parcel was marked and a list made, and the whole added together on the list, and then the parcels of notes and list bundled together and sealed up. This was done in the ordinary course of that branch of business at the Bank of the State of New York, not only for the complainants, but for some sixty or more of other country banks. The witnesses cannot speak positively, from any recollection they have, of this particular packet of notes, except from their firm belief arising from the care and general accuracy with which they conducted that department of business in what was called the redemption office of their bank. Now, I think it is fair to conclude that they are accurate as to the amount that was taken in for redemption that week—that the notes were counted in parcels and marked and set down correctly in

VOL. IV.—5

1839.

COMMERCIAL
BANK OF BUF-
FALO
v.
THE BANK OF
THE STATE OF
NEW YORK.

the list, making altogether the forty-six thousand five hundred and twenty-six dollars; for, if an error of two thousand dollars in that amount had occurred, an examination of their cash account and of the cash on hand would have enabled them to discover it; but no such error could they find. In another respect, however, a mistake may have happened, which no examination at their office would disclose; and that is, a parcel or parcels containing just two thousand dollars may have got separated from the rest, and, instead of being put into the packet or bundle for the Commercial Bank of Buffalo, may have been placed accidentally, or from mere oversight, with other parcels of notes belonging to some other of the country banks which the clerks were, at the same time, engaged in putting up in a similar manner preparatory to being sent off: and thus the missing two thousand dollars may have found their way into the hands of a clerk, teller or officer of some other bank, who has dishonestly concealed the fact of his finding the money and applied it to his own use. This is the most rational mode of accounting for the loss of the missing notes, if, indeed, the bundle was deficient the amount suggested when it was first opened by Mr. Daniels, the complainants' cashier.

The fact of such deficiency the complainants are bound to make out. The burthen is thrown upon them by the nature of the issue and the weight of evidence on the other side.

Daniels and Caryl, two of the complainants' witnesses, do, indeed, swear positively to the deficiency; and this too from having actually counted the notes as contained in the bundle when it was opened. They are positive, also, that while the counting was going on, none of the bills could have been purloined or mislaid or overlooked.

Mr. Daniels opened the parcels and assorted the notes, putting those of the same denomination together, and then counting those of such denomination by themselves—setting down the number and amount on the list found in the bundle; and, by adding the whole, found the total to be two thousand dollars less. By the same mode of counting the notes, Mr. Caryl, the teller, arrived at the same result.

From the care that was taken to prevent any accidental

mislaying or confusion of the notes, while the investigations to ascertain the amount were going on, as testified to by these witnesses, I can hardly suppose that there was a loss or mislaying of notes to produce that large difference : but, there is one thing in which it seems to me that Mr. Daniels was remiss and which I am surprized that any cashier or officer of a bank, undertaking to ascertain the amount of a bundle or packet of bank notes put up as these were, should omit—and that is, to take off the amount in figures which he finds marked on the strap or band around each parcel of notes in the bundle, and add them together to see if the amount in the aggregate agrees with the amount shown by the list.   I do not understand from Mr. Daniels' deposition that he made this comparison at all.   He appears to have taken the different amounts marked on the parcels and set them down in his " scratch-book," but he does not say that he compared them with the list in the first instance.   If he had made that comparison, it would have shown him, at once, whether any of the parcels contained in the list and making up the items thereof were missing ; and if such appeared to be the fact, it would have furnished an additional test of the accuracy of his further count, showing the deficiency.   But, notwithstanding that comparison was not made in the first instance, I am constrained to say, from the testimony of the cashier and teller, that there was a deficiency of two thousand dollars of the notes when the packet was received at the complainants' bank ; and, from the other testimony in the cause, that it was short that amount when it left the bank of the defendants.   Consequently the loss must be borne by them.

A point has been raised as to the propriety of making Mr. Withers a party defendant in his official capacity as cashier of the defendants ; and the court is asked to dismiss the bill, as to him, with costs.   The practice of making an officer of a corporation, against whom a bill is filed, a party defendant for the purpose of having the answer that shall be put in verified by oath, has been too long and too well established to be questioned at this time : (9 Paige 193.)   There was nothing improper in making Mr. Withers a party for that purpose in this instance ; and his right to costs must be de-

1839.

COMMERCIAL
BANK OF BUF-
FALO
v.
THE BANK OF
THE STATE OF
NEW YORK.

termined by the right of the corporation, whose officer he is, they being identical.

With regard to the costs of the suit, resting as they do entirely in the discretion of the court, to be awarded to or withheld from the prevailing party, according to circumstances and not always following the event, I think enough appears to excuse the defendants from paying the complainants' costs. The officers of the Bank of the State of New York had as good reason for believing in the accuracy of their clerks, as in that of the cashier and teller of the Commercial Bank of Buffalo. It was a fair question to be raised upon their respective evidence; and, after all, the scales have hung very nearly even. There has been but a slight preponderance, not enough to show that the defendants have litigated otherwise than in the most perfect good faith, and from what the officers of the bank must have felt was an honest and conscientious discharge of their duty towards those whose interests were confided to their direction and management, to resist the claim. Besides, there appears to have been little or no pains taken by the officers of the Commercial Bank of Buffalo, before filing their bill, to satisfy the defendants that the mistake had occurred with them—they had been notified of the alleged deficiency, and had received back from Buffalo the original list, (made the exhibit A in the cause,) with Mr. Daniels' figures upon it; but this served very little to shake their confidence in their own clerks' accuracy. The "straps" that were around the parcels had been destroyed, and the evidence they would have furnished, if carefully preserved and returned, might, perhaps, have had a more convincing effect than Mr. Daniels' bare assertions at that time. Though the complainants have succeeded, yet it is under circumstances requiring them to bear their own costs of the suit.

*Decree*—That the defendants deliver to the complainants or their receiver or agent, the two thousand dollars of notes of the Commercial Bank of Buffalo, still in the possession of the defendants—and that the parties bear their own costs, respectively, of this suit.